# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| F.I.M. CORPORATION, | ) | |
| Plaintiff, | ) | No. 06-532 L |
| v. | ) | Judge Nancy B. Firestone |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division

E. KENNETH STEGEBY
KATHLEEN DOSTER
Trial Attorneys
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, DC 20044-0663
Tel: 202.616.4119
Fax: 202.305.0506
Email: Kenneth.Stegeby@usdoj.gov

OF COUNSEL:
Jamie Rosen
Office of the General Counsel
United States Department of Agriculture
33 New Montgomery Street, #17
San Francisco, CA 94105

Dated: November 2, 2006

## TABLE OF CONTENTS


DEFENDANT'S MOTION TO DISMISS THE COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF . . . . . . . . . . 1

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION . . . . . . . . . . 2

I. BACKGROUND . . . . . . . . . . 2

II. ARGUMENT . . . . . . . . . . 4

A. Standard of Review . . . . . . . . . . 4

B. It is Well Established That the Privilege to Graze Federal Lands Is Not a Legally Compensable Property Interest . . . . . . . . . . 5

1. The Need for a Compensable Property Interest . . . . . . . . . . 6

2. Plaintiff's Term Grazing Permit Is Not A Legally Compensable Property Interest . . . . . . . . . . 8

3. Plaintiff's Does Not Have A Compensable Property Interest in the Bloody Canyon Allotment, Including The Forage on the Allotment . . . . . . . . . . 11

C. As a Matter of Law, the Cancellation of Plaintiff's Grazing Permit Did Not Take Plaintiff's Alleged State-Based Water Rights . . . . . . . . . . 14

D. Plaintiff Has No Factual or Legal Basis on Which to Argue Its Ranch Has Been Taken . . . . . . . . . . 17

E. Plaintiff's Claim For Compensation Under 43 U.S. C. § 1752 (g) Should Be Dismissed . . . . . . . . . . 19

F. There Is No Recovery For Consequential Damages In A Takings Claim . . . . . . . . . . 21

III. CONCLUSION . . . . . . . . . . 23

## TABLE OF AUTHORITIES

### CASES

Ace Property & Cas. Ins. Co. v. United States,
60 Fed. Cl. 175 (2004) . . . . . . . . . . 20

Advanced Cardiovascular Sys., Inc. v. Sci-Med Life Sys., Inc.,
988 F.2d 1157 (Fed. Cir. 1993) . . . . . . . . . . 4

Ainslie v. United States,
355 F.3d 1371 (Fed. Cir. 2004) . . . . . . . . . . 4

Alabama v. Texas,
347 U.S. 272 (1954) . . . . . . . . . . 12

Almota Farmers Elevator and Warehouse Co. v. United States,
409 U.S. 470 (1973) . . . . . . . . . . 21

Alves v. United States,
133 F.3d 1454 (Fed. Cir. 1998) . . . . . . . . . . 9

American Pelagic Fishing Co. v. United States,
379 F.3d 1363 (Fed. Cir. 2004), cert. denied, 125 S. Ct. 2963 (2005) . . . . . . . . . . 6, 7, 18

Bartz v. United States,
633 F.2d 571 (Ct. Cl. 1980), cert. denied, 450 U.S. 967 (1981) . . . . . . . . . . 21

Bass Enterprises Prod. Co. v. United States,
133 F.3d 893 (Fed. Cir. 1998) . . . . . . . . . . 21

Bradley v. Chiron Corp.,
136 F.3d 1317 (Fed. Cir. 1998) . . . . . . . . . . 4

Buford v. Houtz,
133 U.S.320 (1890) . . . . . . . . . . 13

Caldwell v. United States,
250 U.S. 14 (1919) . . . . . . . . . . 12

Catellus Dev. Corp. v. United States,
31 Fed. Cl. 399 (1994) . . . . . . . . . . 5

Cedars-Sinai Medical Center v. Watkins,
11 F.3d 1573 (Fed. Cir. 1993) . . . . . . . . . . 5

Chancellor Manor v. United States,
331 F. 3d 891 (Fed. Cir. 2003) . . . . . . . . . . 14

Colvin Cattle Co., Inc. v. United States,
67 Fed. Cl. 568 (2005) . . . . . . . . . . 17

Colvin Cattle Co., Inc. v. United States,
No. 06-5012, Slip. Op. (Fed. Cir. Nov. 1, 2006) . . . . . . . . . . 13, 15-16, 20

Conti v. United States,
291 F.3d 1334 (Fed. Cir. 2002), cert. denied, 537 U.S. 1112 (2003) . . . . . . . . . . 6-8

Diamond Bar Cattle Co. v. United States,
168 F.3d 1209 (10th Cir. 1999) . . . . . . . . . . 13, 16

Gardner v. Stager,
892 F.Supp. 1301 (D. Nev. 1995) . . . . . . . . . . 16

Great N.R. v. United States,
315 U.S. 262 (1942) . . . . . . . . . . 12

Higginson v. United States,
384 F.2d 504 (6th Cir. 1967), cert. denied, 390 U.S. 947 (1968) . . . . . . . . . . 13

Hunter v. United States,
388 F.2d 148 (9th Cir. 1967) . . . . . . . . . . 15-16

Kirby Forest Indus., Inc. v. United States,
467 U.S. 1 (1984) . . . . . . . . . . 21

Kleppe v. New Mexico,
426 U.S. 529 (1976) . . . . . . . . . . 12

Light v. United States,
220 U.S. 523 (1911) . . . . . . . . . . 13

M&J Coal Co. v. United States,
47 F.3d 1148 (Fed. Cir. 1995), cert. denied, 516 U.S. 808 (1995) . . . . . . . . . . . . . . . . . . 6

Manier v. United States,
31 Fed. Cl. 410 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

McKinley v. United States,
828 F. Supp. 888 (D.N.M. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Meyers Investigative & Sec. Servs., Inc. v. Watkins,
275 f.3d 1366 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Mitchell v. United States,
267 U.S. 341(1925) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Olson v. United States,
292 U.S. 246 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Omaechevarria v. Idaho,
246 U.S. 343 (1918) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Omnia Commercial Co. v. United States,
261 U.S. 502 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Perkins v. Bergland,
608 F.2d 803 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Renne v. Geary,
501 U.S. 312 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Reynolds v. Army & Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Ridge Line, Inc. v. United States,
346 F.3d 1346 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Sartori v. United States,
67 Fed. Cl. 263 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Skip Kirchdorfer, Inc. v. United States,
6 F.3d 1573 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Sweeten v. United States Dep't. of Agric.,
684 F.2d 679(10th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

Tennessee Valley Authority v. Powelson,
319 U.S. 266 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Thomson v. Gaskill,
315 U.S. 442 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States ex rel. TVA v. T. Indus. Inc.,
489 F.2d 921 (6th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. 50 Acres of Land,
469 U.S. 24 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. 8.41 Acres of Land,
680 F.2d 388 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. 93.970 Acres of Land,
360 U.S. 328 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. California,
332 U.S. 19 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. City and County of San Francisco,
310 U.S. 16 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Fuller,
409 U.S. 488 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 17

United States v. General Motors Corp.,
323 U.S. 373 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Grimaud,
220 U.S. 506 (1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Miller,
317 U.S. 369 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

United States v. Pennsylvania-Dixie Cement Corp.,
178 F.2d 195 (6th Cir. 1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. Petty Motor Corp.,
327 U.S. 372 (1946) . . . . . . . . . . 22

United States v. State Water Res. Control Bd.,
182 Cal. App. 3d 82 (1986) . . . . . . . . . . 15

United States v. Union Pacific R. Co.,
353 U.S. 112 (1957) . . . . . . . . . . 12

Utah Power & Light Co. v. United States,
243 U.S. 389 (1917) . . . . . . . . . . 12, 16

Vacated on other Grounds,
353 U.S. 953 (1957) . . . . . . . . . . 14

Westinghouse Electric Corp. v. United States,
41 Fed. Cl. 229 (1998) . . . . . . . . . . 4

White Sands Ranchers of N.M. v. United States,
14 Cl. Ct. 559 (1988) . . . . . . . . . . 18

Williamson County Regional Planning Comm'n v. Hamilton Bank,
473 U.S. 172 (1985) . . . . . . . . . . 4

Wyoming v. Colorado,
259 U.S. 419 (1922), vacated on other grounds, 353 U.S. 953 (1957) . . . . . . . . . . 14

**CONSTITUTIONS**

U.S. Const. art. IV, § 3, cl. 2 . . . . . . . . . . 12

**STATE CONSTITUTIONS**

Cal. Const. Art. X . . . . . . . . . . 15
Cal. Const. Art. XIV . . . . . . . . . . 15

**STATUTES**

7 U.S.C. § 6912(e) . . . . . 20
16 U.S.C. § 472 . . . . . 10
16 U.S.C. § 580 . . . . . 10
16 U.S.C. § 5801 . . . . . 11
16 U.S.C. § 1801 . . . . . 7
16 U.S.C. § 1531, et seq . . . . . 9
16 U.S.C. § 1532(19) . . . . . 9
16 U.S.C. § 1538(a)(1)(B) . . . . . 9
43 U.S.C. §§ 1701-1784 . . . . . 11
43 U.S.C. § 1702(k) . . . . . 11
43 U.S.C. § 1752 . . . . . 11
43 U.S.C. § 1752(g) . . . . . 1, 2, 19, 20
43 U.S.C. § 1752(h) . . . . . 11
43 U.S.C. §1752(g) (2004) . . . . . 19

**STATE STATUTES**

Cal. Water Code § 100 (West 1971) . . . . . 15
Cal. Water Code § 102 . . . . . 15

**RULES**

RCFC 12(b)(1) . . . . . 1, 4-6, 20, 23
RCFC 12(b)(6) . . . . . 1, 4, 19, 23

**REGULATIONS**

36 C.F.R. 222.3(b) . . . . . 13
36 C.F.R. § 222.3(b) (2004) . . . . . 9
36 C.F.R. § 251.101 . . . . . 3

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 941163 (1976) . . . . . 11

**OTHER AUTHORITIES**

Wilkinson and Anderson, Land and Resource Planning in the National Forests,
64 Ore. L. Rev. 1 (1985) . . . . . 10

## LIST OF EXHIBITS

| Exhibit No. | Exhibit Description |
|---|---|
| A | Excerpt from Environmental Assessment for the Proposed Reintroduction of Bighorn Sheep into Lee Vining Canyon Mono County, California |
| B | Term Grazing Permit (Permit No. 19105) dated July 17, 1996 |
| C | Letter dated November 24, 1999 from Ronald F. Keil to Interested Party |
| D | Decision Notice and FONSI date July 21, 2000 |
| E | Letter dated May 17, 1999 from Ronald F. Keil to F.I.M., Inc. |
| F | Letter dated October 11, 2000 from Ronald F. Keil to F.I.M., Inc. |

**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF**

Defendant, United States of America, hereby moves to dismiss plaintiff's first cause of action under RCFC 12(b)(6), and plaintiff's second cause of action under RCFC 12(b)(1).

Plaintiffs' first cause of action alleges a temporary or permanent taking of plaintiff's property, which purportedly includes grazing rights on the Bloody Canyon Allotment in the Inyo National Forest, California, water rights on the Bloody Canyon Allotment, and private fee property (otherwise known as the "Ranch") in California and Nevada, as a result of the cancellation of its term grazing permit, which authorized plaintiff to graze nine hundred sheep on the Bloody Canyon Allotment during certain times of the year.

Plaintiff's allegations regarding its grazing rights on the Bloody Canyon Allotment must be dismissed since plaintiff does not have a compensable property right to graze sheep on land undisputedly owned by the United States. Plaintiff's allegations regarding its water rights must also be dismissed because even *if* plaintiff holds state-based water rights within the Bloody Canyon Allotment,[1/] such water rights do not include the right to graze on the Bloody Canyon Allotment. Finally, plaintiff's allegations regarding a taking of its fee property should be dismissed because any decrease in value of the Ranch because of a change in grazing rights is not a loss in value which is legally compensable under the Fifth Amendment.

In its second cause of action, Plaintiff seeks compensation pursuant to 43 U.S.C. §

---

[1/] Plaintiff has not identified the water rights it allegedly holds under California law, and the United States is not aware of any such water rights. However, solely for purposes of this motion, the government assumes that plaintiff holds some unidentified water rights on the Bloody Canyon Allotment.

1752(g) for permanent range improvements allegedly placed or constructed by plaintiff and its predecessors in interest on the Bloody Canyon Allotment. Plaintiff's second cause of action should be dismissed as not ripe since plaintiff has failed to avail itself of the administrative process for compensation pursuant to 43 U.S.C. § 1752(g).

Finally, plaintiff's allegations seeking compensation for consequential damages in paragraph 35(D), to the extent it seeks a separate cause of action, should be dismissed since lost opportunity costs, lost profits, and loss of good will, as well as other consequential damages, are not compensable under the Fifth Amendment.

A memorandum in support of this motion follows.

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION

## I. BACKGROUND[2]

Plaintiff claims that, in 1972, it acquired title to various ranch properties in California and Nevada, including all attendant water, forage, range and access rights. See Plaintiff's Complaint ("Compl."), ¶¶ 4, 8. According to Plaintiff, it also acquired those same rights and interests in certain public lands, known as the Bloody Canyon Allotment. See id. at ¶¶ 8, 10. Plaintiff further contends that it has a right to all range improvements it has placed or constructed on the Bloody Canyon Allotment. See id. at ¶ 8. Plaintiff does not specify in its Complaint which range improvements it has supposedly placed or constructed on the Bloody Canyon Allotment.

In 1985, the Sierra Nevada Bighorn Sheep ("Bighorn Sheep") were reintroduced into the Lee Vining Canyon area of the Inyo National Forest and Yosemite National Park. See Def. Ex.

[2] Unless otherwise indicated, those factual allegations of the complaint recounted in this memorandum are assumed to be true solely for purposes of this motion.

A. In 1996, the Forest Service re-issued a ten-year permit to plaintiff to graze 900 sheep within the Bloody Canyon Allotment from June 16 to September 15. See Def. Ex. B.

On April 20, 1999, the Bighorn Sheep was emergency listed as endangered under the Endangered Species Act ("ESA"), and on January 3, 2000, the Bighorn Sheep was listed permanently as an endangered species, in large part based on the threat of disease transmission from domestic sheep. See 64 Fed. Reg. 19,300 (Apr. 20, 1999). In November 1999, the Inyo National Forest initiated an Environmental Assessment to evaluate the impacts of continued domestic sheep grazing on several allotments in the vicinity of Bighorn Sheep habitat, including the Bloody Canyon Allotment. See Def. Ex. C. The Environmental Assessment culminated in a Decision Notice and Finding of No Significant Impact dated July 21, 2000 to cancel permits on the Bloody Canyon Allotment and Alger Lake Allotment. See Def. Ex. D. The Forest Service offered a replacement allotment to plaintiff but plaintiff declined the offer. See Def. Ex. E; Def. Ex. F. Plaintiff did not appeal the decision to cancel its permit, and, on October 11, 2000, the permit was cancelled.[3] See Def. Ex. F.

## II. ARGUMENT

### A. Standard of Review

Defendant moves to dismiss plaintiff's first cause of action pursuant to RCFC 12(b)(6). The Court may dismiss a cause of action for failure to state a claim pursuant to RCFC 12(b)(6)

---

[3] In its Complaint, plaintiff contends that it "has exhausted its administrative remedies." Compl. ¶ 26. However, since plaintiff chose not to appeal the decision to cancel its permit, plaintiff has not "exhausted its administrative remedies." See 36 C.F.R. § 251.101 ("It is the position of the Department of Agriculture that any filing for Federal judicial review of and relief from a decision appealable under this subpart is premature and inappropriate, unless the appellant has first sought to resolve the dispute by invoking and exhausting the procedures of this subpart.").

when the cause of action as asserted in the complaint is "fatally flawed in [its] legal premises and destined to fail, . . . spar[ing] litigants the burdens of unnecessary pretrial and trial activity." Manier v. United States, 31 Fed. Cl. 410, 419 (1994) (quoting Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 988 F.2d 1157, 1160 (Fed. Cir. 1993). In deciding a motion to dismiss, the Court "must accept all well-pled factual allegations as true and draw all reasonable inference in the plaintiffs favor." Ainslie v. United States, 355 F.3d 1371, 1373 (Fed. Cir. 2004). However, mere "conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim" and will not withstand a motion to dismiss. Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998). Moreover, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." Westinghouse Electric Corp. v. United States, 41 Fed. Cl. 229, 233-34 (1998) (citations omitted).

Defendant moves to dismiss plaintiff's second cause of action pursuant to RCFC 12(b)(1) since a failure to present a ripe dispute is a defect which goes to the Court's jurisdiction to adjudicate that suit. Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 190-93 (1985). It is well-established that the party asserting jurisdiction bears the burden of proving that the court in which suit is brought may entertain that party's claim. Thomson v. Gaskill, 315 U.S. 442, 446 (1942); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). Moreover, plaintiff's claim of jurisdiction may not be maintained "by mere averment." Rather, if plaintiff's "allegations of jurisdictional facts are challenged . . . in any appropriate manner, [plaintiff] must support them by competent proof." Catellus Dev. Corp. v. United States, 31 Fed. Cl. 399, 404-05 (1994) (citations omitted).

As this Court has previously noted, because "federal courts are presumed to lack jurisdiction unless the record affirmatively indicates to the contrary," Renne v. Geary, 501 U.S. 312, 316 (1991), "[t]he burden of establishing the court's jurisdiction rests with the party seeking to invoke it." Sartori v. United States, 67 Fed. Cl. 263, 268 (2005) (citing Meyers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002)); see also Cedars-Sinai Medical Center v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993).

### B. It is Well Established That the Privilege to Graze Federal Lands Is Not a Legally Compensable Property Interest

Plaintiff's complaint alleges that as a result of the cancellation of its term grazing permit, the government has not only taken its permit, but also physically appropriated "grazing lands," "forage rights," and "water rights," contained within the Bloody Canyon Allotment, as well as plaintiff's fee property. See, e.g., Compl. ¶ 22 (contending that the permit cancellation "[t]ransferr[ed] plaintiff's rights in their water and in their forage to the USFS, . . .[i]nterfer[ed] with the ability of plaintiff to economically operate, and prevent[ed] plaintiff from economically operating, the Ranch. . . [and] [a]cquire[ed] and destroy[ed] the value of the permit"); id. at ¶ 23 (contending that defendant has "[p]revent[ed] plaintiff from making economically viable use of their term permit on land administered by the USFS"); id. at ¶ 29(D) ("Defendant's actions alleged herein, each and severally, have physically appropriated grazing lands, forage, and water belonging to plaintiff for defendant's own use and the use of third parties"); id. at ¶ 35C (seeking compensation for "the taking of plaintiff's forage and grazing allotment, $1,000,000").

Since plaintiff does not have a legally compensable property interest in its term grazing permit, or the grazing lands and forage contained within the Bloody Canyon Allotment,

plaintiff's claim for a taking of these alleged property interests must fail. Plaintiff's allegations regarding a taking of its water rights and fee property also must fail for the reasons discussed in Section II.C and Section II.D, respectively.

1. The Need for a Compensable Property Interest

The Federal Circuit has established a two-part test to evaluate whether governmental action amounts to a taking of private property for Fifth Amendment purposes. See e.g., Conti v. United States, 291 F.3d 1334, 1339 (Fed. Cir. 2002), cert. denied, 537 U.S. 1112 (2003); M&J Coal Co. v. United States, 47 F.3d 1148, 1154 (Fed. Cir. 1995), cert. denied, 516 U.S. 808 (1995). "First, a court must evaluate whether the claimant has established a 'property interest' for purposes of the Fifth Amendment [and] [s]econd, once a court has determined that a property interest exists, it must determine whether a taking occurred." Conti, 291 F.3d at 1339.

In other words, the threshold inquiry is whether the right that a plaintiff contends has been taken is one which was part of the owner's right to begin with – that is, whether the right was one of the "sticks" in the "bundle of sticks" owned by plaintiff. American Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1376 (Fed. Cir. 2004), cert. denied, 125 S. Ct. 2963 (2005); M&J Coal, 47 F.3d at 1153 (citing Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1029, 112 S.Ct. 2886 (1992)). To answer this question, courts look to certain "background principles." Lucas, 505 U.S. at 1029; American Pelagic, 379 F.3d at 1376. Sources for these "background principles" can originate in state law, federal law or even common law:

> The Constitution neither creates nor defines the scope of property interests compensable under the Fifth Amendment. Instead, "existing rules and understandings" and "background principles" derived from an independent source, such as state, federal, or

> common law, define the dimensions of the requisite property rights for purposes of establishing a cognizable taking.

Conti, 291 F.3d at 1340.

For example, in American Pelagic, the plaintiff claimed that it had a property interest in its fishing vessel and that regulations that restricted plaintiff's ability to use the fishing vessel as it wished amounted to a taking of its property right. 379 F.3d at 1374. The Federal Circuit looked to "'existing rules or understandings' and 'background principles' derived from an independent source such as state, federal, or common law . . . [to] define the dimensions of the requisite property interest for purposes of establishing a takings claim." Id. at 1376 (citing Lucas, 505 U.S. at 1030). The Federal Circuit noted that when plaintiff purchased the fishing vessel, the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. §§ 1801-1883) (2004) ("Magnuson Act"), was a "'background principle' of federal law that inhered in American Pelagic's title to the vessel." Id. at 1379. As a result:

> [i]t was against this framework of existing federal restrictions on fishing in the EEZ that American Pelagic invested in the *Atlantic Star*. As of 1996, when the *Atlantic Star* was purchased, the Magnuson Act and the attendant regulatory scheme precluded any permitted fisherman from possessing a property right in his vessel to fish in the EEZ. The revocation of American Pelagic's permits, therefore, did not 'go beyond what the relevant background principles would dictate.'

Id. at 1379 (citations omitted).

If a plaintiff cannot establish a compensable property interest, plaintiff's takings claim must fail. See id. at 1372 ("If the claimant fails to demonstrate the existence of a legally cognizable property interest, the courts task is at an end"); Conti, 291 F.3d at 1339 ("However, if a claimant fails to demonstrate that the interest allegedly taken constituted a property interest

under the Fifth Amendment, a court need not even consider whether the government regulation was a taking under the analysis set forth in Penn Central.").[4]

Here, plaintiff's Complaint fails to establish that plaintiff has a compensable property interest in its term grazing permit or the Bloody Canyon Allotment.

2. Plaintiff's Term Grazing Permit Is Not A Legally Compensable Property Interest

Plaintiff was re-issued a term grazing permit by the Forest Service in 1996. See Def. Ex. B. Plaintiff, as a term permit holder, was "authorized to graze livestock owned by the permittee upon designated lands administered by the Forest Service within the [Inyo] National Forest." Id. The term of the permit was "effective until 12/31/05 unless waived, cancelled, or otherwise terminated as provided herein. . ." Id., Part 2, ¶ 6.

Upon signing the permit, plaintiff "fully understood and agreed that this permit . . . can also be cancelled, in whole or in part, or otherwise modified, at any time during the term to conform with needed changes brought about by law, regulation, Executive order, allotment management plans, land management planning, numbers permitted or seasons of use necessary because of resource conditions, or the lands described otherwise being unavailable for grazing." Id.

On October 11, 2000, plaintiff's term grazing permit was cancelled in order to conform with needed changes brought about by the emergency listing of the Bighorn Sheep as endangered under the ESA, 16 U.S.C. § 1531, et seq. See Def. Ex. F. The Forest Service, after informal

---

[4] The need for a compensable property interest is applicable to both physical takings claims and regulatory takings claims. See Ridge Line, Inc. v. United States, 346 F.3d 1346, 1355 (Fed. Cir. 2003); Skip Kirchdorfer, Inc. v. United States, 6 F.3d 1573, 1580 (Fed. Cir. 1993).

consultation with the United States Fish and Wildlife Service ("USFWS"), determined that this action was necessary to protect the Bighorn Sheep from disease transmission from domestic sheep, and to meet its obligations under the ESA, including avoiding the illegal take of an endangered species.[5] See Def. Ex. D.

Although plaintiff held a term grazing permit through October 11, 2000, such permit was "freely revocable" and is not a compensable property right for purposes of the Fifth Amendment. United States v. Fuller, 409 U.S. 488, 494 (1973); Alves v. United States, 133 F.3d 1454, 1457 (Fed. Cir. 1998) ("[T]he distinction between grazing 'permits' and grazing 'preferences' is irrelevant because neither constitutes a property interest compensable under the Fifth Amendment."); 36 C.F.R. § 222.3(b) (2004) ("Grazing permits and livestock use permits convey no right, title, or interest held by the United States in any lands or resources"); see also Def. Ex. B.

A brief discussion of the history of grazing on federal lands provides useful background for why courts have uniformly held that grazing permits are not compensable property interests. For much of the 19th Century, federal lands were used as an incentive to encourage development in the western United States. With the creation of the National Forests beginning in 1891, Congress withdrew its tacit consent for members of the public to graze its lands, and gave to the Department of the Interior the authority to regulate grazing on National Forest lands. See United

---

[5] To "take" an endangered species, as that term is used in the Endangered Species Act, means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in such conduct." 16 U.S.C. § 1532(19); see also 16 U.S.C. § 1538(a)(1)(B) ("[I]t is unlawful for any person subject to the jurisdiction of the United States to . . . take any such [endangered] species within the United States.").

States v. Grimaud, 220 U.S. 506, 521 (1911). Beginning in 1897, however, the Secretary of the Interior began limiting grazing on the forest reserves and, in 1901, began a permit system.

The Transfer Act of 1905, 16 U.S.C. § 472, assigned the administration of grazing on forest reserves to the United States Department of Agriculture's newly created Forest Service. Under the general authority of the Organic Act of 1897, the Forest Service since 1906 has regulated grazing in the national forests to prevent resource deterioration. See Wilkinson and Anderson, Land and Resource Planning in the National Forests, 64 Ore. L. Rev. 1, at 52-57, 104-108 (1985).

In 1950, the Granger-Thye Act, 16 U.S.C. § 580 et seq., first authorized the Forest Service to issue permits for grazing on national forest lands. The Act authorizes the Secretary of Agriculture:

> upon such terms and conditions as he may deem proper, to issue permits for the grazing of livestock for periods not exceeding ten years and renewals thereof: Provided, That nothing herein shall be construed as limiting or restricting any right, title, or interest of the United States in any land or resources.

16 U.S.C. § 580l.

The modern statutes under which grazing is regulated put conditions on the exercise of this authority but otherwise confirm and expand it. The Federal Land Policy and Management Act of 1976 ("FLPMA"), 43 U.S.C. §§ 1701-1784, provides for the regulation of grazing through term grazing permits and the development of allotment management plans ("AMPs"). AMPs are developed in consultation with the permittees, and prescribe the manner in which livestock operations are to be conducted. See 43 U.S.C. § 1702(k). All AMPs must be produced in the context of the overall multiple use objectives of the lands as determined by the agency. See id.

FLPMA gives the Forest Service broad discretion to modify the numbers of livestock grazing and set limits on seasonal use of grazing lands. See 43 U.S.C. § 1752; see also Perkins v. Bergland, 608 F.2d 803 (9th Cir. 1979). Moreover, FLPMA preserved the rule that a grazing permit confers no vested rights on federal land. See 43 U.S.C. § 1752(h); H.R. Rep. No. 94-1163 (1976).

Thus, it is clear that plaintiff never had a legally compensable property interest in the term grazing permit itself, and therefore, the cancellation of its permit cannot form the basis of its Fifth Amendment takings claim. Accordingly, plaintiff's allegations regarding a taking of its term grazing permit must be dismissed. See Compl. ¶¶ 22(F), 23(D), 28.

3. Plaintiff Does Not Have A Compensable Property Interest in the Bloody Canyon Allotment, Including the Forage on the Allotment

Plaintiff seeks compensation "[f]or the taking of plaintiff's forage and grazing allotment." Compl. ¶ 35(C). The grazing allotment consists of over 6,200 acres of land, approximately 5,792 acres of which are owned by the United States and managed by the Forest Service, with the remaining acres owned by the City of Los Angeles. Tellingly, plaintiff does not allege that it holds title to any lands contained within the Bloody Canyon Allotment.

Federal lands are retained and managed by the United States pursuant to its powers under the Constitution, primarily the Property Clause, which gives Congress the power to "dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. The Supreme Court has consistently interpreted this power to be expansive, repeatedly observing that "[t]he power over the public land thus entrusted to Congress is without limitations." Kleppe v. New Mexico, 426 U.S. 529,

539 (1976) (quoting United States v. City and County of San Francisco, 310 U.S. 16, 29 (1940). The Court has emphasized that Congress properly exercises "the powers of both a proprietor and of a legislature over the public domain." Id. at 540; Alabama v. Texas, 347 U.S. 272, 273 (1954). Further, the Property Clause gives Congress the power over the federal lands "to control their occupancy and use, to protect them from trespass and injury and *to prescribe the conditions upon which others may obtain rights in them* . . . ." Utah Power & Light Co. v. United States, 243 U.S. 389, 405 (1917) (emphasis added).

The conveyance of rights in federal lands must be made by express grant of Congress and cannot be implied. See e.g., United States v. Union Pacific R. Co., 353 U.S. 112, 116 (1957); Great N.R. v. United States, 315 U.S. 262, 272 (1942); Caldwell v. United States, 250 U.S. 14, 20-21 (1919). No rights by prescription or adverse possession can be obtained in public lands. See e.g., United States v. California, 332 U.S. 19, 40 (1947); Sweeten v. United States Dep't. of Agric., 684 F.2d 679, 682 (10th Cir. 1982). Where Congress has not given authority for federal property to be transferred, none should be presumed. See Higginson v. United States, 384 F.2d 504, 507 (6th Cir. 1967), cert. denied, 390 U.S. 947 (1968).

Since the United States has not expressly conveyed to plaintiff any right or title to land within the Bloody Canyon Allotment, none should be implied. Despite this, plaintiff continues to allege that the cancellation of its term grazing permit somehow "[t]ransferr[ed] plaintiff's rights in their water[6] and in their forage to the USFS." Compl. ¶ 22(B). Such an allegation is without merit and fails for several reasons.

---

[6] Plaintiff's allegations regarding its alleged water rights are discussed in Section II.C.

Here, as discussed above, plaintiff's grazing permit "convey[s] no right, title, or interest held by the United States in any lands or *resources*," 36 C.F.R. 222.3(b) (emphasis added). Moreover, there is a "well-settled body of law holding no private property right exists to graze public rangelands." Diamond Bar Cattle Co. v. United States, 168 F.3d 1209, 1215 (10th Cir. 1999). The uniformity of case law stems from the fact that grazing on the public lands of the Western United States was initially at the "suffer[ance]" of the United States; private use of the land occurred only by virtue of an "implied license" or a "tacit consent" which the United States could withdraw at any time. Light v. United States, 220 U.S. 523, 535 (1911) (citing Buford v. Houtz, 133 U.S. 320, 326 (1890)); see also Omaechevarria v. Idaho, 246 U.S. 343, 352 (1918) (holding that Congress has never "conferred upon citizens the right to graze stock upon the public lands[, and] [t]he government has merely suffered the lands to be so used"); Colvin Cattle Co. V. United States, No. 06-5012, Slip. Op. (Fed. Cir. Nov. 1, 2006) ("[P]rior to the [Taylor Grazing Act], grazing on federal public lands was done at the United States' sufferance.").

Thus, although plaintiff's term grazing permit allowed them access to the forage on the Bloody Canyon Allotment, that access was subject to the terms and conditions of the permit (including the term and condition that the grazing permit could be suspended or cancelled at any time). The grazing permit does not convey a compensable property interest in the forage or grazing lands contained within the Bloody Canyon Allotment.

Accordingly, since plaintiff does not have a legally compensable property interest in the permit, the grazing lands, or the forage on the Allotment, plaintiff's takings claim based on these allegations should be dismissed. See Compl. ¶¶ 22(B), 28, 35(C).

### C. As a Matter of Law, the Cancellation of Plaintiff's Grazing Permit Did Not Take Plaintiff's Alleged State-Based Water Rights

Plaintiff alleges that the cancellation of its term grazing permit has also caused the taking of plaintiff's water rights. See Compl. ¶¶ 22. This issue can be readily resolved as a matter of law since courts have uniformly held that state-based water rights do not include a right to graze the surrounding federal land.

As discussed supra, the threshold inquiry in evaluating a takings claim is to determine whether a plaintiff possesses a compensable property interest. See Chancellor Manor v. United States, 331 F.3d 891, 901 (Fed. Cir. 2003). Defendant does not dispute that the right to appropriate water can be a legally compensable property interest. See, e.g., Wyoming v. Colorado, 259 U.S. 419, 460-61 (1922), vacated on other grounds, 353 U.S. 953 (1957). However, the question that must be answered is whether the "stick" that plaintiff contends has been taken – the right to graze sheep on the federal public lands that surround the spring or stream which constitutes the water right – is included within plaintiff's bundle of sticks. The answer is definitively no.

In California, all water sources located within the state are owned by the public. See Cal. Water Code § 102. In addition, a water right under California state law is "usurfructuary" in nature and is subject to governmental regulation. See United States v. State Water Res. Control Bd., 182 Cal. App. 3d 82, 104 (1986) (noting that "[u]nlike real property rights, usufructuary water rights are limited and uncertain . . . [and] no water rights are inviolable; all water rights are subject to governmental regulation."). In 1928, by constitutional amendment, the California legislature subjected all water users to the universal limitation that water use must both be

reasonable and serve a beneficial purpose. Cal. Const. Art. XIV, § 3, amended by, Cal. Const. Art. X, § 2; see Cal. Water Code § 100 (West 1971).

In California, the scope of water rights does not include an appurtenant right to graze on surrounding federal lands. See Hunter v. United States, 388 F.2d 148, 153-54 (9th Cir. 1967). In fact, the Ninth Circuit has explicitly held:

> Whether [the right to use waters on federal land] carried with it an easement to graze is a question readily answered. Hunter's contention is based upon the well settled rule that the grant of a right in real property includes all incidentals possessed by the grantee and without the property granted cannot be fully enjoyed. He urges that the adjoining lands provide the means to use the water beneficially and must therefore be deemed appurtenant to it. He claims too much. The appurtenance must be limited to that which is essential to the use of the right granted; it does not include the thing with which the right granted is used.

Id.; Accord Colvin Cattle, No. 06-5012, Slip. Op. at 5-6 (Fed. Cir. Nov. 1, 2006) (since "grazing on federal public lands was done at the United States' sufferance . . . any water right that [plaintiff] or its predecessors obtained could not and did not include an attendant right to graze on public lands"); Diamond Bar, 168 F.3d at 1212 (finding that a vested water right does not include a right to graze public lands since "[a]ny grazing of cattle on public lands by plaintiffs' predecessors was permitted by an implied license, which is merely a 'personal privilege to do some particular act or series of acts on land without possessing any estate or interest therein, and is ordinarily revocable at the will of the licensor.'"); Gardner v. Stager, 892 F.Supp. 1301, 1303-04 (D. Nev. 1995), aff'd, 103 F.3d 886 (9th Cir. 1996) (finding that plaintiffs' argument that their predecessors acquired vested water rights to which grazing rights were appurtenant was "expressly rejected long ago") (citing Hunter, 388 F.2d at 153-55)).

The scope of a state-based water right on federal land cannot include an attendant right to graze because any historical grazing done on the public lands was done at the sufferance of the United States and did not confer on private parties any property interest in the land. Therefore, California would not be able to grant plaintiff any interest in the Bloody Canyon Allotment through its state-based water right since the United States Constitution gives Congress – not California – the power over federal land to "prescribe the conditions upon which others may obtain rights in them." Utah Power & Light Co. v. United States, 243 U.S. 389, 405 (1917).

Since plaintiff's claimed water right does not include an attendant right to graze on the Bloody Canyon Allotment, the cancellation of plaintiff's term grazing permit cannot effect a taking of its alleged water right. See Colvin Cattle, No. 06-5012, Slip. Op. at 7 ("Therefore, because [plaintiff's] water rights do not have an attendant right to graze, no governmental action restricting [plaintiff's] ability to graze on federal land can affect its water right in a manner cognizable under the Fifth Amendment."). Accordingly, defendant's motion to dismiss should be granted. See Compl. ¶¶ 22(A)-(B), 23(A)-(B), 28.

### D. Plaintiff Has No Factual or Legal Basis on Which to Argue Its Ranch Has Been Taken

Plaintiff alleges that the government has taken its Ranch, contending that the cancellation of the grazing permit "[i]nterfer[ed] with the ability of plaintiff to economically operate, and prevent[ed] plaintiff from economically operating, the Ranch . . . ." Compl. ¶ 22(C). Plaintiff also claims that the government has engaged in a pattern and practice of physically taking plaintiff's private property" and has thereby "[a]cquir[ed] and destroy[ed] the value of the Ranch." Compl. ¶¶ 23, 23(C).

While plaintiff's private fee ownership of the Ranch can certainly form the basis for a finding of a compensable property interest, see Compl. ¶9, any decrease in the value of the Ranch due to a change in plaintiff's use of the Bloody Canyon Allotment is not a loss in value which is legally compensable. See United States v. Fuller, 409 U.S. 488, 492-93 (1973) (holding that "the Fifth Amendment does not require the Government to pay for that element of value based on the use of respondents' fee lands in combination with the Government's permit lands"); Colvin Cattle Co., Inc. v. United States, 67 Fed. Cl. 568, 575-76 (2005) ("We do not believe, however, that any decrease in the value of plaintiff's ranch due to a change in plaintiff's use of the Montezuma Allotment results in a compensable taking.").

In Fuller, the Supreme Court held that a jury in a condemnation case could not take into consideration the value of the grazing permit in determining just compensation for the property because "the Government as condemnor may not be required to compensate a condemnee for elements of value that the Government has created, or that it might have destroyed under the exercise of governmental authority other than the power of eminent domain." 409 U.S. at 492; see also White Sands Ranchers of N.M. v. United States, 14 Cl. Ct. 559, 568 (1988) ("The hard truth of the matter is that . . . the ranchers have no 'rights' to compensation for the loss of use of the public domain."). Since any "value" added to plaintiff's Ranch as a result of its ability to legally graze sheep pursuant to its permit was never a property right, any loss in value as a result of any alleged loss of use of the Allotment for grazing cannot be considered in plaintiff's takings claim.

Moreover, even more fundamentally, plaintiff's Ranch has not been "taken" at all. For

example, in American Pelagic, plaintiff did not contend that his fishing vessel was taken by the revocation of his fishing permits because he "was left with the ship; it was not physically taken. Instead, restrictions merely were placed on its use." 379 F.3d at 1375 n.15. Since plaintiff could not argue that his fishing vessel was taken, he contended that his *right to use* the fishing vessel to fish for mackerel and herring in the EEZ was taken as a result of the revocation of his permits and authorizations. See id. at 1374-75. The Federal Circuit held that plaintiff did not acquire, as part of his title to the fishing vessel, the right to fish for Atlantic mackerel and herring in the EEZ. See id. at 1382-83. As a result, "American Pelagic thus did not possess the property right that it asserts formed the basis for its takings claim. In the absence of that property right, its claim is fatally defective." Id.

Similarly, here, plaintiff owns the Ranch but it does not own any property interest to use the Bloody Canyon Allotment. As a result, any claim regarding a taking of plaintiff's Ranch as a result of the taking of its purported grazing rights cannot form the basis for its taking claims and should be dismissed pursuant to RCFC 12(b)(6). See McKinley v. United States, 828 F. Supp. 888, 893 (D.N.M. 1993) ("While the Court does not doubt that the modification of appellant's permit [reducing his grazing allowance by 44%] has a negative effect on the value of his base property and the economic viability of his ranching operation, the value added to his property by his holding the permit is clearly a 'benefit and privilege bestowed by the government'") (citations omitted)).

### E. Plaintiff's Claim For Compensation Under 43 U.S.C. § 1752(g) Should Be Dismissed

Plaintiff contends that in addition to, and separate from, its takings claims discussed

above, it is entitled to compensation under 43 U.S.C. § 1752(g). See Compl. ¶¶ 36-38. Section 1752(g) provides in pertinent part:

> Whenever a permit or lease for grazing domestic livestock is canceled in whole or in part, in order to devote the lands covered by the permit or lease to another public purpose, . . . the permittee or lessee shall receive from the United States a *reasonable compensation* for the adjusted value, *to be determined by the Secretary concerned*, of his interest in *authorized permanent improvements placed or constructed by the permittee or lessee on the lands covered by such permit* or lease, but not to exceed the fair market value of the terminated portion of the permittee's or lessee's interest therein.

43 U.S.C. §1752(g) (2004) (emphasis added); see also 36 C.F.R. 222.6(a) (2004). For plaintiff to succeed on its Section 1752(g) claim, it must allege and prove that it has applied to the Secretary of Agriculture for "reasonable compensation" for the improvements it asserts a claim for and exhausted its administrative remedies. Plaintiff will be unable to do this.

First, the only authorized permanent improvements on the Bloody Canyon Allotment are sheep troughs owned by the United States. See Def. Ex. B. At no time after the cancellation of plaintiff's term grazing permit does plaintiff allege that it applied to the "Secretary concerned" for a "reasonable compensation for the adjusted value . . . of his interest in authorized permanent improvements . . . ." 43 U.S.C. § 1752(g).

With respect to improvements on Forest Service land, 7 U.S.C. § 6912(e) requires that a claimant "shall exhaust all administrative appeal procedures established by the Secretary or required by law before a person may bring an action in a court of competent jurisdiction." See Ace Property & Cas. Ins. Co. v. United States, 60 Fed. Cl. 175, 181 (2004) ("statutory exhaustion requirements are mandatory, and courts are not free to dispense with them."). As a result, plaintiff's Section 1752(g) claim must be remanded to the agency in the first instance to make a

determination regarding "reasonable compensation." See id. at 181-84 (stating that because the "statutory provision mandating exhaustion contained in 7 U.S.C. § 6912(e) is explicit," the Court of Federal Claims had no jurisdiction to entertain claims against the United States based on the Department of Agriculture's actions); Colvin Cattle, No. 06-5012, Slip. Op. at 9-10 (holding that when a claimant under 43 U.S.C. § 1752(g) does not request a determination by the Secretary of the value of the improvements, the "claim is not ripe for failure to exhaust administrative remedies").

For all of these reasons, plaintiff's 43 U.S.C. § 1752(g) claim should be dismissed either pursuant to RCFC 12(b)(1).

**F. There Is No Recovery For Consequential Damages In A Takings Claim.**

Plaintiff seeks compensation for "costs and damages sustained as a proximate result of defendant's interference with the contract[7] and normal ranching operations, including but not limited to, fees for leasing other lands, feed costs, lost opportunity costs, lost profits, loss of good will, acquisitions of livestock, and other capital and non-capital expenses, $1,000,000." Compl. ¶ 35(D).

The Fifth Amendment provides that private property shall not be taken for public use "without just compensation." The determination of just compensation is controlled by federal law. See United States v. 93.970 Acres of Land, 360 U.S. 328, 332-33 (1959); United States v. Miller, 317 U.S. 369, 380 (1943); Bartz v. United States, 633 F.2d 571, 576-77 (Ct. Cl. 1980), cert. denied, 450 U.S. 967 (1981). The traditional measure of compensation for the taking of real

[7] Plaintiff does not identify what "contract" it is referring to and the government is not aware of any contract.

property is the "fair market value" of the property as of the date of the taking. United States v. 50 Acres of Land, 469 U.S. 24, 29 (1984); Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 9 (1984); Bass Enterprises Prod. Co. v. United States, 133 F.3d 893, 895 (Fed. Cir. 1998). Fair market value is defined as the amount for which the property would be sold by a knowledgeable owner willing but not obligated to sell to a knowledgeable purchaser who desired but is not obligated to buy. See United States v. Miller, 317 U.S. at 374; Almota Farmers Elevator and Warehouse Co. v. United States, 409 U.S. 470, 474 (1973); Kirby Forest Indus., 467 U.S. at 10. "Just compensation includes all elements of value that inhere in the property, but it does not exceed market value fairly determined." Olson v. United States, 292 U.S. 246, 255-56 (1934). Accordingly, a court must "value the property as a whole rather than the sum of the various uses to which it has been placed." United States v. 8.41 Acres of Land, 680 F.2d 388, 395 (5th Cir. 1982).

However, while the purpose of just compensation is to put the owner "in as good a position pecuniarily as he would have occupied if his property had not been taken," Miller, 317 U.S. at 373, not all losses suffered by the owner are compensable under the Fifth Amendment. United States v. Petty Motor Corp., 327 U.S. 372, 377-78 (1946). Specifically, "for consequential loss or injury resulting from lawful governmental action the law affords no remedy." Omnia Commercial Co. v. United States, 261 U.S. 502, 510 (1923). "In the absence of a statutory mandate the sovereign must only pay for what it takes, not for opportunities which the owner may lose." Tennessee Valley Authority v. Powelson, 319 U.S. 266, 281 (1942).

In United States v. General Motors Corp., 323 U.S. 373 (1945) the Court stated:

> When it takes the property, that is, the fee, the lease, whatever he may own, terminating altogether his interest, under the established law it must pay him for what is taken, not more; and he must stand whatever indirect or remote injuries are properly comprehended within the meaning of 'consequential damage' as that conception has been defined in such cases. Even so the consequences often are harsh. For these whatever remedy may exist lies with Congress.

Id. at 382. Consequential damages have been analyzed most closely in connection with losses to one's business, see, e.g., General Motors Corp., 323 U.S. at 380, and have been held to include "loss of profits, damages to goodwill, the expense of relocation, and other such . . . losses." Petty Motor Corp., 327 U.S. at 377-79; see Mitchell v. United States, 267 U.S. 341, 345 (1925) (holding that just compensation does not require payment for destruction of a business, lost profits or loss of good will, even though these losses and expenses affect selling price); United States v. Pennsylvania-Dixie Cement Corp., 178 F.2d 195, 198 (6th Cir. 1949) ("settled rules of law . . . preclude a consideration of consequential damages for losses to the business of the land owner."). Likewise, a "frustration of future business plans is not compensable" even if there is concrete evidence of such plans. United States ex rel. TVA v. T. Indus. Inc., 489 F.2d 921, 925 (6th Cir. 1973).

Thus, the proper measure of compensation for a taking is the fair market value of the property taken as of the date of taking, and does not include the consequential damages allegedly suffered by plaintiff, including lost income, lost profits, loss of good will, the expense of relocation of its sheep, feed costs and other unspecified "capital and non-capital expenses." As a result, the allegations contained in paragraph 35(D), to the extent that plaintiffs seek a separate cause of action, should be dismissed.

## III. CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court grant defendant's motion to dismiss plaintiff's first cause of action pursuant to RCFC 12(b)(6) and plaintiff's second cause of action pursuant to RCFC 12(b)(1).

Dated: November 2, 2006

Respectfully submitted,

THOMAS L. SANSONETTI
Assistant Attorney General
Environment & Natural Resources Division

/s/ E. Kenneth Stegeby
E. KENNETH STEGEBY
KATHLEEN DOSTER
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
TEL: 202.616.4119
FAX: 202.305.0506
E-mail: Kenneth.Stegeby@usdoj.gov

*Attorney for Defendant United States*

Of Counsel:

Jamie Rosen
Office of the General Counsel
United States Department of Agriculture
33 New Montgomery Street, #17
San Francisco, CA 94105